

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Karl Cayton
County Attorney
Dawson County
Lamesa, Texas

Dear Sir:

Opinion No. O-2383
Re: May a school board (independent
school district) employ a janitor,
where the janitor married a niece
of one of the members of the school
board. The janitor's wife is now
dead but there are children. And
related questions.

We have received your letter wherein you request
the opinion of this department upon the above stated ques-
tions. Your letter reads as follows:

"I would like to have Art. 432 P.C. inter-
preted as to the Nepotism law on the following
fact matters:

"1. May a school board (Ind. School Dist.)
employ a janitor, where the janitor married a
niece of one of the members of the school board.
The janitor's wife is now dead, but they have
children as a result of said marriage.

"It is my opinion that they may employ the
man, because the death of the janitor's wife sever-
ed the relationship of niece and nephew and the
fact that the trustee will be the great uncle of
the janitor's children will not preclude the hir-
ing. Please advise me if this is correct.

"2. May a school board buy gasoline and oil
on the contract basis, etc. for the use of the
School from a blood cousin of one of the members
of the school board.

"Art. 432 P.C. is indefinite as to this be-
cause it uses the word, employ or confirm the
appointment, etc. In this case they do not elect

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Karl Cayton, Page 2

the man to any position, but merely purchase from him.

"3. May the school board, give printing work to the brother of one of the members of the school board.

"Same explanation and situation as in No. 2."

Article 432 of the Penal Code reads as follows:

"No officer of this State or any officer of any district, county, city, precinct, school district, or other municipal subdivision of this State, or any officer or member of any State, district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any general or special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm, the appointment to any office, position clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree of consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees, or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatsoever."

It is clear, from reading the above article, that a janitor may not be employed by an independent school district if he is related to a member of the school board within the second degree of affinity or the third degree by consanguinity.

The method of computing the degree of consanguinity is set out in the case of Tyler Tap Railroad Company and Douglass vs. Overton, 1 Tex. Ct. of App., page 268, Sec. 535, wherein the court stated:

"In computing the degree of lineal consanguinity existing between two persons, every generation is the direct course of relationship between the two parties makes a degree, and the rule is the same by the civil and common law. The mode of computing

Honorable Karl Cayton, Page 3

degrees of collateral consanguinity at the common and by the canon law is to discover the common ancestor, to begin with him to reckon downwards, and the degree the two persons, or the more remote of them, is distant from the ancestor, is the degree of kindred subsisting between them. For instance, two brothers are related to each other in the first degree because from the father each one of them is one degree. An uncle and nephew are related to each other in the second degree, because the nephew is two degrees distant from the common ancestor, and the uncle is extended to the remotest degree of collateral relationship."

Degrees of affinity are computed in the same manner as those of consanguinity. That is to say, the relation of the wife stands at the same degree of affinity to the husband as they are related to the wife of consanguinity. Kelly vs. Neely, 12 Ark. 657, 56 Am. Dec. 288; 2 C.J. 379; 2 C.J. Secundum, 992.

Following the rule as laid down in the Tyler Tap Railroad Company and Douglass case, supra, the deceased wife of the man whose employment as janitor is anticipated, and the member of the school board, being niece and uncle, were related by consanguinity in the second degree. In the case of Kelly vs. Neely, supra, cited with approval by the Court of Criminal Appeals of Texas in the case of Stringfellow vs. State, 61 SW 719, it is held that by marriage the man places himself in the same degree of propinquity to all the relatives of his wife, either by affinity or consanguinty, as she actually stands towards them. This being true, the husband, during the lifetime of the wife, was related to the member of the school board by affinity in the second degree. Does this relationship exist after the death of the wife? This question is answered by the Court of Civil Appeals in the case of Lewis, Assessor, et al vs. O'Hair, 130 SW 2nd 379, as follows:

"Death of the spouse terminates the relationship by affinity; if, however, the marriage has resulted in issue who are still living, the relationship by affinity continues." Also see 2 C.J. 379; Stringfellow vs. State, 61 SW 719; Page vs. State, 22 Texas App. 551.

Honorable Karl Cayton, Page 4

This will advise you that your first question is answered in the negative.

With reference to your second and third questions, it was clearly the intention of the Legislature in enacting Article 432, supra, to prohibit the employment of persons related within the prohibited degree, from rendering personal services which services were to be paid for, directly or indirectly, from public funds. The services to be rendered in each of the instances referred to in your second and third questions are not personal services, but are goods or merchandise to be delivered in compliance with a contract to be entered into between the school board and the respective individuals as independent contractors. The contractors are not under the personal supervision of the members of the board, and the board is not interested in how the obligation created by the contract is discharged, but are only interested in the results obtained.

Nor do we believe the contract referred to in your letter, is affected by Article 373 of the Penal Code, as the contract referred to in that article are contracts in which the county or city officer has a pecuniary interest, and has nothing whatsoever to do with the so-called "Nepotism" law.

Therefore, it is the opinion of this department that your second and third questions should be answered in the affirmative.

Trusting that the above satisfactorily answers your question, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By D. Burle Davies

D. Burle Davies
Assistant

DBD:AW

APPROVED JUN 11, 1940

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN